IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID WASHINGTON, Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 08-2407 |
| TANK INDUSTRY CONSULTANTS, INC., Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.** **NOVEMBER 14, 2008**

David Washington ("Washington") brought this action against his former employer, Tank Industry Consultants, Inc. ("TIC"), alleging employment discrimination and retaliation. Presently before this Court is TIC's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). For the following reasons, this Motion is granted.

## I. BACKGROUND

Washington is a resident of Cordova, Tennessee. TIC is an Indiana corporation, and has its headquarters located in Indianapolis, Indiana. TIC is in the business of inspecting water tanks, and Washington was an employee of TIC whose responsibilities included inspection of such tanks.[1] In May 2006, TIC sent Washington to Montgomeryville, Pennsylvania to do an inspection job that would require him to remain there until September 2006. Washington's duties were undertaken pursuant to a contract between TIC and the Montgomery Township

[1]Washington's duties were to ensure that all work being done on water tanks met the criteria, standards, and regulations of all regulatory agencies so that there would be no danger to users and to citizens of the surrounding areas.

Sewer Authority ("MTSA"), and a contract with CKS Engineering ("CKS"). MTSA and CKS both maintain their principal places of business in Pennsylvania. Washington was sent to the MTSA site by TIC to inspect the work of U.S. Filter, a contractor based in Georgia, and D.S. Industries, U.S. Filter's subcontractor who was headquartered in Florida. Washington asserts that when he arrived on the site, the project was already years behind schedule, and that although there were two African-American workers on the site for a short time until August 2006, he was the only African-American in a position of authority. He maintains that because he attempted to correct failings in the quality of the work of the contractors, the work site soon became racially hostile, and he was subjected to racial slurs and racially hostile actions. Washington claims that these included being called "nigger," having a nail put in his car tire, having his car vandalized, and being confronted with a hangman's noose at the work site. He reported the racial harassment to TIC who, he claims, took no action to stop or prevent the harassment. Washington also reported the harassment to the Montgomery Township Police Department, and subsequently, in November 2006, he filed a lawsuit against U.S. Filter, D.S. Industries, MTSA, and CKS in this Court alleging violations of his civil rights, and state tort law claims.[2] That action has since been resolved.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[2] Washington v. U.S. Filter, D.S. Industries, Inc., CKS Engineers, and Montgomery County Sewer Authority, E.D. Pa., Civil Action No. 06-5154.

where it might have been brought."[3] 28 U.S.C. § 1404(a) (West 2008). "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong – however brought in a court–presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960).

In considering a motion to transfer under § 1404(a), courts do not limit their consideration to the three factors enumerated in the statute, but instead "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

> The private interests have included: plaintiff's forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interest factors have included: the enforceability of the

---

[3]It is not disputed that this action could have been brought in the Southern District of Indiana. 28 U.S.C. § 1391(b)(1) provides that a "civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought . . . [i]n . . . a judicial district where any defendant resides . . . ." 28 U.S.C. § 1391(c) provides that a corporation "shall be deemed to reside in the district within which it has the most significant contacts." Here, TIC is an Indiana corporation with its headquarters in Indianapolis. Accordingly, Washington could have brought this action in the Southern District of Indiana.

> judgment; practical considerations that could make trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80.

The moving party bears the burden of showing that transfer would be in the interest and convenience of the parties. Because plaintiff's choice of forum is the "paramount consideration" in deciding a motion to transfer venue, "[u]nless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." Shutte, 431 F.2d at 25; see also Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 341 (E.D. Pa. 2001). We will now balance the relevant private and public interest factors as enumerated in Jumara below.

## III. DISCUSSION

### 1. The Place Where the Claim Arose

Washington asserts that the "factual nexus" of this case arises from the acts which were committed within the jurisdiction of the Eastern District of Pennsylvania. In his complaint, Washington states that the instances of racial harassment that were directed at him were reported to TIC, but they took no action to prevent or protect him from the harassment.

TIC, on the other hand, maintains that this case is not about what Washington claims happened to him in Pennsylvania, but rather, how TIC responded to the reports of racial harassment, and how it treated Washington after that time. TIC asserts that for purposes of venue, the Southern District of Indiana is proper because all employment decisions related to Washington including his job placement, training, his third-party harassment complaints, and

ultimately his termination were determined and implemented at its headquarters in Indianapolis, Indiana.

We agree with TIC's position, and opine that this factor weighs heavily in favor of TIC. There is no question, in this case, that the alleged acts of racial harassment against Washington took place in Montgomeryville, Pennsylvania, which is within the Eastern District of Pennsylvania. However, while Washington claims that TIC failed to prevent and/or put an end to the alleged racial harassment by third-party contractors at the job site, there is no indication or evidence that TIC made such decisions and took such actions in Pennsylvania. Rather, all indications are that any and all decisions TIC might have made in regard to the alleged harassment were made at its headquarters in Indianapolis, Indiana. In addition, it is most significant to the issue of venue that all of the other acts that Washington avers in his Complaint regarding employment discrimination and retaliation against him following the MTSA job occurred outside of Pennsylvania, and were again, decisions made about Washington's employment that took place at its Indianapolis headquarters. According to Washington's Complaint, these include:

1. On or about October 5, 2006, Washington was advised by Bill Piper of TIC that a job he was scheduled to go to in Tennessee had been cancelled. The job had, in fact, not been cancelled, but Washington was not sent there;

2. During the first week of October 2006, a job opened up in Baltimore, Maryland and Washington was not sent there, but another inspector, who had recently been rehired, was sent on that job;

3. In or about the second week of October 2006, Washington applied for

unemployment insurance because he had not been working more than two weeks, but TIC did not cooperate with the application, stating that he was still working;

4. On or about December 1, 2006, James Peyer of TIC called him and voiced his displeasure about the lawsuit he had filed, and told him to drop the suit against CKS and the Sewer Authority or it would lose them as customers;

5. On December 18, 2006, James Peyer sent an e-mail to Michael Wong, the Project Manager of a work site in Colorado where Washington was working, inquiring whether he wanted Washington to return to the site after the Christmas holidays. He stated that "I want to make sure you have been satisfied with his performance thus far before I send him out again." Wong responded by e-mail that "Washington has done an excellent job thus far." After the holidays, Washington returned to the job in Colorado for a brief period of time, but was replaced without explanation;

6. In the following months, TIC denied Washington numerous other job opportunities that were given to inspectors of equal or lesser qualifications;

7. On or about February 27, 2007, Washington requested the opportunity to attend training classes that were promised to him before he filed his lawsuit, but TIC refused to send him;

8. Washington was written up for supposed violations[4] that would have not been given to other employees; and

[4]Washington received a safety violation write-up on a job in Goshen, Kentucky.

9. In August 2007, TIC terminated Washington's employment.[5]

(Compl. ¶¶ 29-44.)

It is apparent from the above averments that most, if not all, the alleged employment discrimination and retaliation actions on behalf of TIC occurred outside Pennsylvania, and virtually all of the decisions regarding his employment came from TIC's headquarters in Indianapolis.[6] We, thus, find that this factor weighs heavily in TIC's favor.

**2. Convenience of Parties and Plaintiff's Choice of Forum**

The plaintiff's choice of forum is a significant consideration that should not be disturbed lightly. See First Union Nat'l bank v. United States, 55 F. Supp. 2d 331, 332 (E.D. Pa. 1999). However, where plaintiff chooses a forum other than his state of residence, his choice is given less weight. See Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001); Sovereign Bank, F.S.B. v. Rochester Cmty. Sav., 907 F. Supp. 123, 126 (E.D. Pa. 1995).

As already noted, Washington is a resident of Cordova, Tennessee which is geographically much closer to the Southern District of Indiana than the Eastern District of Pennsylvania. Plaintiff's only contact with this jurisdiction appears to be that he has retained Pennsylvania counsel who represented him in the prior suit against the contractors and MTSA. TIC was not a party to that action, which has since been resolved. That case arose out of conduct

[5]The final project Washington worked on as a TIC employee, from which he was terminated in August 2006, was located in Xenia, Ohio.

[6]It is notable that Washington initially filed a discrimination charge with the Pennsylvania Human Relations Commission, but it was transferred to the Indianapolis District of the United States Equal Employment Opportunity Commission ("EEOC") for investigation and ruling. An EEOC investigator later dismissed Washington's administrative charge and issued a Right-to-Sue notice out of its Indianapolis office.

which was alleged to have occurred in the Eastern District Pennsylvania and against at least one Pennsylvania entity (MTSA) which is located in this District, and as such, it was appropriate for that action to proceed to resolution here. As discussed above, we agree with TIC's position that its conduct regarding the alleged harassment against Washington at the Montgomeryville work site consisted of decisions that took place at its headquarters in Indianapolis, Indiana. Moreover, all of the retaliatory conduct claimed by Washington related to jobs outside of Pennsylvania, and decisions regarding such were made in the Southern District of Indiana. The only connection Washington has to this District is that his attorneys are located here. We cannot find that it would be overly burdensome for his attorneys to litigate this action in the Southern District of Indiana, and for these reasons, we find that this factor weighs significantly in favor of the transfer.

**3. Location of the Witnesses**

Although convenience of the witnesses is a consideration in the transfer analysis, it matters "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Washington states that his witnesses are a U.S. Filter employee from Georgia, a D.S. foreman from Florida, two other D.S. employees who reside in West Virginia, two MTSA employees who reside in Pennsylvania, and two CKS employees who also reside in Pennsylvania. TIC submits that its potential witnesses reside in the Southern District of Indiana and/or reside in states closer to that District than the Eastern District of Pennsylvania.[7]

We first opine that, geographically, Washington's above-named four witnesses who

---

[7]TIC states that Washington has named as potential witnesses its former employees, Bill Pyrus, Robert Ferguson, and Kirk Casey Lindheimer, who are not within the subpoena power of the Eastern District of Pennsylvania if they refuse to cooperate as witnesses.

reside outside Pennsylvania would not be more inconvenienced with traveling to the Southern District of Indiana rather than this District since they live in Georgia, Florida, and West Virginia. Moreover, as we discussed above, TIC's decisions regarding Washington's employment were made at its headquarters in Indianapolis, and its potential witnesses who were involved in such decision making would be located in or, at least, closer to that District. In addition, any witnesses associated with Washington's claims of retaliation that occurred at any job site that he named in his Complaint, including the one at which he was ultimately terminated,[8] reside outside Pennsylvania, and most would live closer to the Southern District of Indiana. While this District may be a more convenient forum for the four witnesses that Washington asserts are residents of Pennsylvania, their convenience does not outweigh the convenience of the majority of the other witnesses in this matter who are not residents of Pennsylvania. Thus, this factor weighs moderately in TIC's favor.

**4. Location of the Records**

TIC asserts that all of the relevant files concerning Washington's employment are located at its office in Indianapolis, Indiana. These files include Washington's personnel file, his unemployment file, documentation and records of where and when Washington and other TIC employees were sent for jobs, documentation and records of TIC's policies and its application and enforcement of such policies, equal employment opportunity and harassment documentation, and records received from contractors at the job sites where Washington worked, including those at which he allegedly committed policy violations. TIC argues that such records are voluminous,

[8]As noted, the final project from which Washington was terminated for allegedly borrowing money from a customer is located in Xenia, Ohio, which is within 100 miles of the Southern District of Indiana.

and that it would be overly expensive and burdensome for it to produce these documents in the Eastern District of Pennsylvania. However, there are also relevant documents already here in this District. As noted, Washington had brought a prior action against U.S. Filter, D.S. Industries, CKS, and MCSA, and the documents related to this action are at his attorneys' office in this District. We do not find that it would be an overwhelming burden or expense on the part of either party to produce their documents for litigation in either District. As such, we find that this factor does not weigh in favor of either party.

**5. Public Interest Factors**

In addition, we also find several public interest factors to be neutral. TIC asserts that the congestion of the court dockets in the Districts at issue should be considered. TIC states that the pending cases in the Eastern District of Pennsylvania are up while the pending cases in the Southern District of Indiana are down. We, however, find no merit to this assertion that this matter would somehow be slower to final disposition in this Court.

TIC also argues that this matter belongs in the Southern District of Indiana because that Indiana community has the greater interest in the resolution of the dispute between the parties as TIC's decisions regarding Washington's employment were made in Indianapolis where TIC maintains its place of business. TIC further argues that Pennsylvania jurors who once had an interest in addressing the alleged harassment claimed by Washington in his original case against the contractors would no longer have such an interest since that matter has been resolved. This factor, however, also does not weigh in favor of either party since we find that neither jurisdiction has a greater interest than the other in having this matter litigated in its respective District.

## IV. CONCLUSION

After considering the above public and private factors, this Court finds that they balance strongly in favor of TIC, and therefore, transfer to the Southern District of Indiana is appropriate in this case. The place where the action arose, the convenience of the parties, and the location of the witnesses all weigh in favor of transferring venue. For these reasons, TIC's Motion to Transfer Venue is granted.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID WASHINGTON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 08-2407 |
| TANK INDUSTRY CONSULTANTS, INC., | : | |
| Defendant. | : | |

**ORDER**

**AND NOW**, this 14th day of November, 2008, upon consideration of Defendant, Tank Industry Consultants, Inc.'s, Motion to Transfer Venue (Doc. No. 12), and Plaintiff, David Washington's, response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.

It is further **ORDERED** that this case be transferred to the Southern District of Indiana.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE